# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1698

_____

United States of America,
        Appellee,

v.

Efrain Garcia-Gonon,
        Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Northern District of Iowa.
\*
\*
\*

_____

Submitted: October 13, 2005
Filed: January 4, 2006

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Efrain Garcia-Gonon was charged in a one count indictment with transporting illegal aliens, knowing or in reckless disregard of their status as illegal aliens, in violation of 8 U.S.C. § 1324(a). A jury found Garcia-Gonon guilty, and the district court[1] sentenced him to 24 months of imprisonment, 2 years of supervised release, a $2,144.00 fine, and a $100.00 special assessment. Garcia-Gonon appeals, arguing that the district court erred (1) in submitting a "reckless disregard" instruction to the jury

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

and (2) in applying an obstruction of justice enhancement to his applicable Sentencing Guidelines range based on its perjury finding. We affirm.

## I. *Facts*

Garcia-Gonon, a Guatemalan national, and his co-defendant, Macario-Chavez, were detained after a routine traffic stop on Interstate 80 near Victor, Iowa. They were driving with eight additional passengers, all Guatemalan illegal aliens, in the rear of a rented 2004 Mercury Mountaineer. An Iowa State Trooper contacted Immigration and Customs Enforcement, and Garcia-Gonon and Macario-Chavez were arrested and later indicted for violation of 8 U.S.C. § 1324(a).

Garcia-Gonon rented the Mercury Mountaineer in Los Angeles, California, two days before being stopped in Iowa. Macario-Chavez testified that Garcia-Gonon hired him to help drive to Chicago, Illinois, and that he knew the passengers were illegal aliens. Several of the illegal-alien passengers testified by videotaped deposition and stated that Garcia-Gonon, whom they had never met, picked them up at a park in Los Angeles. Each deponent stated that Garcia-Gonon did not speak to them much but fed them along the way. The passengers were going to Chicago to look for work. Each passenger paid a lump sum of $1500 for assistance in crossing the border and transportation to Chicago.

At trial, Garcia-Gonon testified in his defense. He stated that he was traveling to Chicago from Los Angeles to purchase a vehicle. He claimed that he met the eight additional Guatemalan passengers at a park during a soccer match. According to Garcia-Gonon, the Guatemalans begged for a ride after becoming aware that he was traveling to Chicago. Garcia-Gonon also testified that he told his passengers that they would be more comfortable without their luggage, so his passengers left their bags behind. He testified that he did not know the immigration status of his passengers, but he assumed that the "majority" of immigrants from his country "have documents" and are legally in this country.

At the conclusion of the presentation of evidence, the district court instructed the jury and gave an instruction on "reckless disregard," as referenced in § 1324(a). Garcia-Gonon objected to the use of this instruction, stating that it was a "willful blindness" instruction and no facts were presented to support such an instruction; his objection was overruled. The jury found Garcia-Gonon guilty on Count I of the indictment.

At sentencing, the district court enhanced Garcia-Gonon's criminal offense level by two for obstruction of justice based on its perjury finding. Garcia-Gonon objected, but his objection was overruled. This adjustment raised Garcia-Gonon's offense level to 17, with a criminal history category of I, making the Sentencing Guidelines range 24 to 30 months. Applying the Guidelines as advisory, the district court imposed a 24-month term of imprisonment, 2 years of supervised release, a fine of $2,144.00, and a $100.00 special assessment.

## II. *Discussion*
### A. *Jury Instructions*

Garcia-Gonon argues that the district court erred in giving a "reckless disregard" instruction to the jury because it was, in essence, an improper "deliberate ignorance" or "willful blindness" instruction. Garcia-Gonon states that he objected twice to the use of what he characterized as the deliberate ignorance or willful blindness instruction—Jury Instruction No. 17.[2] Garcia-Gonon considered the

---

[2]Jury instruction No. 17, reads as follows:

An act is done "knowingly" if a defendant realized what he was doing and did not act through ignorance, mistake or accident. The government is not required to prove that a defendant knew that his acts or omissions were unlawful. You may consider the evidence of a defendant's acts and words, along with all other evidence, in deciding whether a defendant acted knowingly.

To act with "reckless disregard" means to be aware of, but to consciously or

instruction unnecessary because the district court had already set forth the charges and elements to be proven in Jury Instructions Nos. 14 & 15. Garcia-Gonon claims that the deliberate ignorance or willful blindness instruction requires evidence that he lacked actual knowledge of the facts, and a showing that he tried to avoid obtaining actual knowledge. Garcia-Gonon contends that no such evidence was offered.

Further, Garcia-Gonon argues that Jury Instruction No. 17 should not have been given because it may have confused the jury and created the "possibility that the jury [would] be led to employ a negligence standard and convict a defendant on the impermissible ground that he should have known [an illegal act] was taking place." *United States v. White*, 794 F.2d 367, 371 (8th Cir. 1986). Thus, according to Garcia-Gonon, Jury Instruction No. 17 should not have been given because no facts put him on notice that criminal activity was probably occurring.

The government responds by pointing out that even though Garcia-Gonon characterizes Jury Instruction No. 17 as a "willful blindness" instruction, it was, in fact, a "reckless disregard" instruction, and the district court, in actuality, gave no "willful blindness" instruction. The government submits that the jury instructions, taken as a whole, correctly state the law. Therefore, it is the government's contention that the district court did not abuse its discretion in formulating and charging the jury using Jury Instruction No. 17.

---

deliberately ignore, facts and circumstances clearly indicating that the person being transported was an alien who had entered or remained in the United States in violation of law.

You may not find that the defendant acted knowingly, however, if you find that the defendant actually believed that the aliens were legally present in the United States or if you find that the defendant was simply careless. A showing of negligence, mistake or carelessness is not sufficient to support a finding of knowledge.

Appellant's Addendum at 9.

We review the district court's jury instructions for abuse of discretion, and this court will affirm "[i]f the instructions, taken as a whole, fairly and adequately submitted the issues to the jury." *United States v. Florez*, 368 F.3d 1042 (8th Cir. 2004) (quoting *United States v. Lalley*, 257 F.3d 751, 755 (8th Cir. 2001)). "A district court has broad discretion in instructing the jury, and jury instructions do not need to be technically perfect or even a model of clarity." *United States v. Gianakos*, 415 F.3d 912, 920 (8th Cir. 2005).

In its prosecution under 8 U.S.C. § 1324(a), the government had to prove that Garcia-Gonon knew or acted in reckless disregard of the fact that his eight passengers were not lawfully in the United States. Accordingly, the district court did not err in instructing the jury on the definition of reckless disregard. Moreover, seeing as there is no Eighth Circuit model jury instruction defining reckless disregard, the district court did not abuse its discretion by using the Eleventh Circuit definition. In addition, the district court included language in the instruction addressing Garcia-Gonon's concerns about the jury finding him guilty of negligence or carelessness, so as to avoid any unfair prejudice. We hold the instructions, taken as a whole, fairly and adequately submitted the relevant issues to the jury, and that Garcia-Gonon's challenge to the jury instructions is without merit.

## B. *Sentence Enhancement*

Next, Garcia-Gonon asserts that the district court impermissibly applied a sentencing enhancement for obstruction of justice. Garcia-Gonon claims that he made no false or materially false statements, and the district court erred when it concluded that he obstructed justice without making specific findings as to what specific statements he made that were materially false. Garcia-Gonon states that the district court must find that he committed perjury before making this upward departure, and if a reasonable trier of fact could find the testimony to be true, then there should be no imposition of the enhancement. Moreover, Garcia-Gonon contends that his denial of guilt does not constitute perjury.

After hearing all of the evidence, the district court determined that Garcia-Gonon gave false testimony regarding his guilt. The district court stated that Garcia-Gonon testified falsely as to his "role" in the offense, but Garcia-Gonon points out that the district court did not identify where in the transcript he testified about his role. Garcia-Gonon maintains that he was not asked specifically what his role in this offense was; he was only asked about how he met the alien passengers. Further, Garcia-Gonon states that he was not asked if someone hired or paid him to transport the aliens from Los Angeles to Chicago.

"We review a district court's factual findings underlying an obstruction of justice enhancement for clear error and its construction and application of the Guidelines de novo." *United States v. Nichols*, 416 F.3d 811, 821 (8th Cir. 2005) (citing *United States v. Mendoza-Gonzalez*, 363 F.3d 788, 796 (8th Cir. 2004)). Whether Garcia-Gonon committed perjury and in doing so obstructed justice is a factual finding, and we will reverse the district court's imposition of a sentencing enhancement only upon a showing of clear error. *United States v. Kessler*, 321 F.3d 699, 702–03 (8th Cir. 2003). Pursuant to U.S.S.G. § 3C1.1, a defendant is subject to an enhancement if he testifies falsely under oath in regard to a material matter and does so willfully rather than out of confusion or mistake. "If a defendant objects to an obstruction enhancement relying on perjury, the district court must make findings that the defendant willfully gave false testimony concerning material matters in the case. We give 'great deference' to a district court's decision to grant an enhancement for obstruction of justice, and will reverse an enhancement only when the district court's findings are insufficient." *Nichols*, 416 F.3d at 821 (internal citations omitted).

The district court is not permitted to give the upward departure "simply because a defendant testifies on his own behalf and the jury disbelieves him." *Id.* (*United States v. Flores*, 362 F.3d 1030, 1037 (8th Cir. 2004)). Once the defendant objects to the enhancement, the district court must conduct an independent evaluation and determine whether the defendant committed perjury. This determination is sufficient

if "'the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury.'" *Id.* (quoting *Flores*, 362 F.3d at 1037).

In making its ruling, the district court stated:

> I was the trial judge, and I'm not basing my decision on the jury verdict. I'm basing it on my evaluation of the Defendant's testimony at trial under oath in the context of the other evidence. I make the finding that the Defendant willfully obstructed or impeded or attempted to obstruct or impede the administration of justice during the course of the trial by knowingly lying in his testimony about his role in bringing these illegal aliens from Los Angeles until they were apprehended by law enforcement. The obstructive conduct related specifically to the Defendant's offense of conviction. His testimony was not as a result of confusion or mistake. It was willfully given in an attempt to avoid responsibility for this criminal act, and, therefore, I do find that the obstruction enhancement in scoring the advisory guidelines sentence is appropriate.

S.T. at 13–14. We conclude the district court's statement was a sufficiently specific finding of perjury and in compliance with relevant precedent for imposing an enhancement for obstruction of justice. Further, the record contains ample evidence

to support the district court's perjury finding.[3] As such, the district court's obstruction of justice finding was not clearly erroneous.

Lastly, we will briefly address Garcia-Gonon's argument that the Fifth and Sixth Amendments require sentencing enhancements to be determined by a jury, and that the standard of proof for applying sentencing enhancements should be beyond a reasonable doubt. In addressing the Sixth Amendment issue, Garcia-Gonon concedes that this argument is contrary to the suggested standard of proof in *United States v. Pirani*, 406 F.3d 543 (8th Cir. 2005). Under an advisory Guidelines regime, sentencing judges are only required to find sentence-enhancing facts by a preponderance of the evidence. *Pirani*, 406 F.3d at 551 n.4. Because the district court applied the Guidelines as advisory, there is no *Booker* error present in this case.

In arguing a violation of Fifth Amendment due process, Garcia-Gonon states that the reasonable doubt standard is derived from the due process clause of the Fifth Amendment, and a potential loss of liberty requires that there be a finding beyond a reasonable doubt to increase the maximum penalty for a crime. This constitutional due

---

[3]The district court considered the credibility of several of Garcia-Gonon's statements. First, Garcia-Gonon stated his reason for renting a car was to drive from Los Angeles to Chicago to get a good deal on a car. Garcia-Gonon did not know the name or location of a car dealership or auction house to buy a car from in Chicago. He further stated that a cousin in Chicago was going to help him purchase a car, but he had not seen this cousin in 14 years. Second, Garcia-Gonon stated that other Guatemalans, after finding out that he was going to Chicago, begged him for a ride and coincidentally got in the car with him. Garcia-Gonon testified that he did not believe that 10 people in a Mercury Mountaineer was too crowded. Further, he testified that he told his passengers that they would be more comfortable without their luggage, so they left their baggage behind. Third, Garcia-Gonon claimed that he met several of his passengers two weeks before the trip, but according to the passenger witnesses, they had not yet entered the United States at that time. Lastly, Garcia-Gonon's stated that he rented a large SUV because there were no smaller vehicles available at LAX.

process argument fails because "it is appropriate for a district court to consider uncharged relevant conduct for purposes of sentencing, even if it increases the sentence that would otherwise be applied, so long as the sentence does not exceed the statutory maximum authorized for the charged offense." *United States v. Red Elk*, 368 F.3d 1047, 1051 (8th Cir. 2004) (*vacated on other grounds*, *Red Elk v. United States*, ___ U.S. ___, 125 S. Ct. 992 (2005); *aff'd on reh'g*, *United States v. Red Elk*, 426 F.3d 948 (8th Cir. 2005)). As Garcia-Gonon was not sentenced in excess of the statutory maximum, and in light of the fact that under an advisory system, the district court is entitled to determine sentences based upon judge-found facts and uncharged conduct, Garcia-Gonon's Fifth Amendment challenge is without merit. *United States v. Red Elk*, 426 F.3d 948, 951 (8th Cir. 2005).

Therefore, the district court's sentence is affirmed.

_____